Thank you. Alright, so Mr. Warner, you've got 6 minutes and you've reserved 2 per rebuttal, is that right? Yes, your honor. I believe it was 7 and 2. Oh, so you're dividing it up 7 and 5? I believe so, your honor. Yes, my co-defendant. I said 3 in my minutes, Mr. Warner. It was originally 6 and 6. Okay, so now it's... I'm going to take 2 and 1 minute per rebuttal and Mr. Warner is going to take however he wants to divvy up his 9. Alright, I'm confused. So, Mr. Warner, you were going to have how many minutes total? So, at the present time, 9 minutes, your honor. 9 minutes. So, 7 now and 2 minutes per rebuttal. Correct, sir. Okay, you may proceed. Good morning, your honors. May it please the court. I am Eric Warner from the Law Office of Eric J. Warner here on behalf of defendants Winona Yugi and Richard Spears. I'd like to mention if there were ever a case for the collateral order doctrine, I respectfully submit it as this one. My clients are effectively stalled and in limbo. No certificate of default has been issued by the clerk. There's no default that we could seek to vacate. My adversary... But there would have to be an inquest for damages and you could certainly argue that there are no damages. And who knows? Your clients could still win with a judgment that awards no damages. I would agree, your honor. So how is it then an appealable order? So, your honor, under the collateral order doctrine or in general, your honor? In general. In general, it's an appealable order, your honor, because this is a case where so far plaintiff's counsel is seeking north of $400,000 in fees. And of course, as your honors are aware, the RICO statute allows for triple damages. If you could address my point. There is still a possibility that after an inquest, there hasn't been a default. After a default, after an inquest, there might be zero damages awarded. Understood, your honor. In light of that, how is this appealable? Why is this appealable now? Well, because, your honor, we feel that, well, first of all, that the allegations in the RICO statute are incredibly vague. You know, we have allegations of mail fraud, predicate acts, wire fraud. I represent the notary public and the property manager who were somehow wrapped into this RICO matter. Telling me that the allegations are vague doesn't tell me why there is appellate jurisdiction now. Well, so then I think I do respectfully, you know, as far as I can, and I appreciate your honors. You know, I appreciate that. Yes, of course, there could be an inquest if we ever get there, if we get to, if a default is ever entered, if my adversary ever files for a default judgment, which he has failed thus far to do. Well, I mean, the last order on the docket is to go to mediation, right? Well, yeah, unfortunately, mediation failed. Okay, so that's fine. So then something will happen after this. Eventually, you'll win or you'll lose, and you'll have a final judgment, and then you get to go to appeal, and you can appeal all these orders and missteps, right? Or if none of those things happens, then you have nothing against you, except hypothetical. Well, except that, respectfully, your honors, because we're in such a limbo, this effectively ends the litigation to my clients. You know, these bribes are incredibly important here. Yes, of course, but we will wind up having an inquest if your honors deny my application, but we would like to be able to attack the merits to show that my clients had no liability whatsoever, the notary public. The docket shows that the case was reassigned to Judge Gonzales? Yes, sir. In May of 2022? Correct, your honor. Has anything happened since May of 2022? Yes, I submitted a letter to Judge Gonzales attempting to explain the similar circumstances. I attempted to make similar arguments to what I made before Judge Kuntz to explain that mediation had failed. I explained that I understood that Judge Kuntz was optimistic that we would settle the case at mediation. However, regrettably, that failed. However, Judge Gonzales came back and he refused to overrule Judge Kuntz's denial of my request simply to file a motion to file a late answer. Really, at the core of this, your honors, this is all I wanted to do was file a motion to request a late leave, to file a late answer, or even better, to file a motion to dismiss. This is a 6P12 motion to dismiss. This is not even based upon motion practice. This was all based on letters, which both judges both disreported. Yeah, well, but it's not a typical circumstance. I mean, you had made a motion to dismiss. It was denied. You were given leave to renew the motion to dismiss. You never renewed the motion. Respectfully, your honor, that's not entirely true because what happened was as I filed the motion properly under Judge Spatz's rules, Judge Spatz did not require a bundling. What happened after that was Judge Spatz passed away. This was over the summer of 2020 when I was effectively single-parenting. Judge Feuerstein denied the motion on July 23, 2020? No, your honor. She did not. In fact, what happened at that point in time was that Judge Feuerstein granted, as far as I recall, plaintiff's motion to extend the time. And in doing so, Judge Feuerstein advised me that I was to refile my motion under her rules, which do require bundling. That's the email during the summer of 2020, the COVID summer that I missed when I was effectively single-parenting two small children. My assistant was working from home. I don't want to give a sob story. Just that, unfortunately, I did happen to miss an email at that time. And Judge Feuerstein did not give me a time limit to renew my motion. So just as there is effectively no time limit to file a motion or an application for a default judgment, albeit yet, of course, no certificate for default has yet even been entered. I'm looking at the docket entry for July 23. It says, you're right, there was a motion for extension of time. But the application is granted to the extent that the motion to dismiss for failure to state a claim is denied with leave to renew. With leave to renew, correct. Did you renew? No, and that's the problem. Because under Judge Feuerstein's rule. So if you didn't renew, how could you, you know, two years later, two and a half years later, then want to make a new motion? It respectfully wasn't two and a half years later. And again, the reason Judge Feuerstein granted me leave to renew without any time period was because, you know, while I had filed the motion properly under Judge Spatz's rules to not require bundling, Judge Feuerstein did require a motion bundling. This is the e-mail during the COVID summer of 2020 that I missed when I was trying to homeschool and entertain two small children effectively on my own. So ultimately it boils down to the fact that I missed an e-mail, which has considerably grieved my clients, considerably grieved my clients and has effectively ended litigation toward them, placing them in limbo. It hasn't effectively ended the litigation, right? You've admitted that several times. You don't have a default against you. You don't have a judgment against you. You don't have any damages against you. All those things still have to be done. Yes, Your Honor. So what you're really saying is that you don't like your situation, but that's not a basis for appellate jurisdiction, right? Well, I would only submit that the issues have effectively, and while I understand an inquest could be had, clearly that that Well, it will be had or you will have no damages against you. Well, and of course, I understand that. But at the same time, though, the liability of my clients would be deemed established, I would imagine, if a default and a default judgment are entered. I did not wait, respectfully, I did not wait two and a half years. This occurred in the summer of 2020, in June. No, I accept that. I exaggerated in my question. And what happened was The concern really, though, is do we have appellate jurisdiction? Yes, and I'd like to explain. So under the collateral order doctrine, under Will v. Hollick, if something conclusively determines the issues as to the aggrieved parties, then that's prong one. But it doesn't do that. You've just admitted it doesn't do that. You don't have any damages against you. Damages is something you can still fight over. Even liability you can fight over. If the default is entered, then you will be deemed to have admitted each of the facts in the complaint. But even that alone doesn't necessarily mean that you will be liable. You'd still have to, the judge would have to find that and issue a judgment as to liability. Well, I would imagine so, yes, Your Honor. But given the severe amount of damages my clients faced, where they were merely the notary public property manager, I would very much appreciate the opportunity to contest the liability before I have to worry about engaging in an inquest. Well, I know you'd rather do that, but the point is that you will still get to appeal all of that if you wait until after there's a judgment. I would only submit that under the second promise would resolve an important issue separate from the merits, which is also part of the clarily order doctrine, and it's effectively under review. Well, I would submit, Your Honor, my point in this is because we can't argue the liability in a case in chief, I do believe it's effectively unappealable under final judgment. I mean, I just don't, you know, and really it boils, you know, look, there's no time, Judge Woyerson did not set a time frame for me to renew my motion, and candidly under the rules there's no certificate of default entered, and even if there were, there's also no time frame under the rules for my adversary to file a motion for default judgment, which apparently he may very well do at his leisure. Well, you know, and there would be no prejudice either here where discovery is hardly even underway. As far as I understand, there have been no depositions. There's been one discovery response where the plaintiff's counsel objected to every demand, and in doing so he only produced the judgment. My clients are not even liable for the judgment. They were wrapped into this as ancillary parties in a RICO manner. Okay. I think we've gone over, but you reserved a bottle. I did, Your Honor. Thank you, bottle. We'll now hear from Mr. Mead. Thank you, Your Honor. May it please the Court? Reserve one minute in rebuttal. Your Honors, we're simply asking here to be able to defend this action. We were denied, and I want to touch upon something that probably should have been mentioned by Mr. Warner, is not only in the same order, well, the same conference with Judge Koontz that he denied my ability to make a 12C motion, he also said, and that's at page three of my brief, that we're not going to be getting a jury trial. That's at JA 212. Although it's not in the order, they can't be disentangled, Judge. We're here sitting, I do have, my clients do have an injunction in this case, and they are. But you didn't appeal that injunction, right? We did appeal the injunction in a prior appeal. And then you withdrew it. Withdrew? You withdrew the appeal. That, right. However, just because I withdrew the injunction, if there's an order that continues the injunction, that is also appealable under 1292.1. Also- You made this argument to another panel already, didn't you? That argument, yes. But this is a- It was rejected, right? Different, I'm sorry, Judge. It was rejected. Yes. It's the same argument, that you don't get to revive your appeal to an injunction that's not timely by saying, well, it's a continuing order. If there were new circumstances being that the judge has denied my ability to even make a motion as of right, and that was why I cited the Richardson v. Lowe case, because in Richardson v. Lowe, the court did find jurisdiction under those circumstances with just a request for an amended answer. I'm asking you to attack the pleadings because we came through that a different owner of this debt exists, and we didn't find that out because this case has been going on for four years without any discovery. I had to find it out through another case in a subpoena to the bank. I can't, again, I can't disjoin the fact that the judge actually stated that we're not getting a jury trial, and we can't file motions in this case. He stated what I see here. It's on page 3JA212. We are simply asking to be able to defend it. What in this case with these defendants, which is new, this issue is new, what makes our circumstances different and these litigants different than those of Lowe when the jurisdiction was held to exist? I'm not going to get into the, and my time is almost up here. So I believe it is up. So unless there's any questions, I'll stop. I was just going to get into the vagaries of the complaint itself, and without a RICO case statement requirement, which Eastern District does not have, this complaint has never been vetted, and I should be allowed to vet it. Thank you. All right. Thank you. We'll now hear from Mr. Giordano. Good morning, Your Honors. May it please the Court. My name is Steven Giordano on behalf of the Plaintiff Appellee, New Falls Corporation. I'll begin by discussing the portion of the order from Judge Coons that is appealed by the appellant Spears and Hughey. Clearly, there's no appellate jurisdiction here. There's a non-final order. There's been, you know- No, I think we get all that. So why haven't you moved for a default? Well, the claims against the defendants Spears and Hughey are intertwined with the other defendants and also with the damages. We haven't gotten depositions, so at the time when we get some more discovery, we'll go forward with an inquest so that we can fully prove everything against everybody. It's our client's choice to do it that way, but that's really what the basis is at this point. Notwithstanding, certainly it is a non-final order. Certainly it is something that if there was a final judgment, which decides all the issues against all their parties, would be appealable, but it's not. Even if the court had- So what's next? I mean, so what is next happening in this case? Well, since- It's on its fourth judge now, right? It's on its, I think, fourth judge. There's been, I think, no less than eight attorneys representing the defendants in this case between the multiple actions and appeals that have been filed in this case.  So when is discovery going to start? Yes, discovery started, actually. In earnest, we have a magistrate, Judge Lee G. Dunst, who is now overhandling the discovery in the case. There have been several discovery orders issued and conferences in the last month, so a couple months. Since November, I think, that we've had multiple conferences and multiple orders on this case, and he's undertaken full control over the docket and is moving things around in a way that actually he said he was pleased with. That being said, with regard to these appeals, there's been no less than three appeals in this very case, as Justice Chin has noted. The idea that there's any merit to these interlocutory appeals is far from truthful. In fact, on the related case, the counsel for the appellant, Wesley Meade, was warned by this court that frivolous invocation of appellate jurisdiction was sanctionable. In that case, it was Mr. Meade and the defendant, Sonny Holdings, appealing from an order of sanctions against Mr. Meade, which was eventually dismissed by this court. We cite it in our brief. That being said, with regard to the appeal by Spears and Hughey, obviously it's a non-final order. There's no basis for appellate jurisdiction. There's also no merit, even if the court had appellate jurisdiction, because there's no abuse of discretion by Judge Coons. Judge Coons can see the docket, just as your honors could. Judge Coons can see that there's been an egregious dilatory delay by the counsel for Spears and Hughey, and Spears and Hughey themselves. What's not been discussed is- What do we make of the judge's statement that you're not getting a trial? He never said specifically you're not getting a trial. He was ordering us to go to resolve this by mediation at that time. It's not clear on the record or- What were his words? His words were basically, you're not getting a trial, you're going to mediate this. You're not getting a trial. You're not going to trial. You're not going to trial. You're going to mediate this thing, and you're going to resolve this. So if he was meaning that you're not doing it now, you're not going ever, that's not clear on the record in any way, shape, or form. It's certainly not set forth in Judge Coons' order. In his order, he never sets forth, I'm barring all jury trials in this case, and you're never, ever going forward before a jury. That's not the case. He was hopeful the case would settle. If he strong-armed you, that's what he was trying to do. That was the tenor of it, and that's what I got from it, and any reasonable person sitting in the courtroom when he was explaining that would have gotten that. What he started off with, your honors, is he did not come out to take the bench for over an hour. It was a very long time. Then he came out, and then he painstakingly read into the record every single thing that has gone on in this case that has been just an unruly list of delays and obstructions to a resolution. And then he set forth his rulings as far as directing us to go to a mediation. At that time, Mr. Meade made an oral application to file a motion to dismiss on the pleadings pursuant to Rule 12C. And Judge Coons, obviously, having gone through the painstaking process of reading through the year's worth of dockets, docket entries, denied that on the record, and then put that into his- He responded by saying, that's fine. At least my clients know I tried. That was the response to the judge denying the motion. Exactly. That's exactly what happened, your honor. And again, with regard to Spears and Hughey, there's no appellate jurisdiction. Even more egregious is with regard to the Sony defendants. They know that there's no appellate jurisdiction with regard to the denial of a leave to file a motion to dismiss on the pleadings. They know that frivolous invocation of this court's appellate jurisdiction is in and of itself sanctional. In fact, it was Mr. Meade who was warned with that. This is the third interlocutory appeal by the Sony defendants in this case. They've had every one of those appeals either denied for lack of jurisdiction or denied outright by this court, including multiple attempts now to appeal the preliminary injunction in this case, which has been affirmed by this court. There's no way to put it other than that this has to be stopped somehow. And the only way to do it would be to issue sanctions for the frivolously invoking this court's appellate jurisdiction. There is just no end to the amount of appeals that will come down unless the court puts a stop to these appeals, which the denial of a leave to file a motion to dismiss on the pleadings. Is that a final order? No, not even close. That could be appealed at any time. Mr. Meade refers to the Richardson-Greenshields case. It's an opposite. That case dealt with the court's denial of leave to file an answer with counterclaims. That obviously would affect the trial. Obviously, if there are counterclaims, that would affect the trial. That's why the court in Richardson actually listened to that appeal. And if you look at Mr. Meade's brief on appeal, he quote lines from that decision saying that the court has no right to ever deny filing a motion. But if you look at the entire quote, if you look at the entire quote in Richard's case, the court actually goes a little bit further than that. The court states that unless there is frivolous or vexation motions, the court can't denial a right to file a motion. So in this case, we have a number of frivolous motions, frivolous appeals. The docket is replete with actions by the court, I mean by the Sony defendants, which have immeasurably made this case go on longer. And Judge Kuhn's aware of that fact, didn't want to make this case go on any longer. And the district court has full discretion to conduct its docket and to set discovery deadlines. And a motion for a judgment on a plea is for rule 12c. Three years after the action has already been commenced, after multiple appeals have been filed, after multiple motions have been filed, including so many motions that the court since told us that we have to ask for leave before we file a motion, which is also within the discretion of the court. All right, but so discovery is proceeding. You're eventually going to move for a default with respect to the individuals. Certainly, because otherwise it's useless. Why would we, like as the court has noted, there's no basis for anything to happen right now. And then you'll move for summary judgment as to Sony, or you'll move. You will move or have a trial, and this thing will get wrapped up at some point. Hopefully, hopefully, but unless of course there's any type of ruling from this court, which says we're not going to take the invocation of appellate jurisdiction lightly. And all these interlocutory appeals that have come down, which eventually get dismissed for lack of jurisdiction. I don't believe that it's going to sew things up as quickly as we would like. We would like to move this thing as quickly as possible. So again, both appeals by the Spears and Hughey defendants and the Sony defendants. There's no appellate jurisdiction for each one of them. They're non-final orders. They can be appealed from final judgment in this case. And both of them, the orders, even if the court had appellate jurisdiction, which it doesn't, there's no abuse of discretion by Judge Coons in issuing his well-reasoned decisions in the case. Thank you, Your Honor. Okay. Thank you very much, Mr. Giordano. Mr. Warner, you have two minutes. Your Honor, I'll be brief. So I understand this case only has persuasive jurisdiction on this court. This is a Third Circuit Court of Appeals court case, the First Bank PR versus Jano Prop 379, Federal Appendix 766. In that case, the court held that an erroneous application or procedure that would evade a review and allow the- Why would yours evade a review? Well, it's because, Your Honor, so in this instance, Judge Gonzales effectively, and with all due respect to him, he adopted- Why would it evade review? You could make every one of the arguments you're making today after there's a final judgment, right? If there's a final- If there's a final judgment. Well, and the same could have been said, respectfully, Your Honors, about the litigants in the First Bank PR case. No doubt that they could have filed a final judgment as well, and I understand that- Well, then it wouldn't have evaded- I'm sorry, Your Honor. Appellate review. I mean, you can't have it both ways. You can't say that one case, it would evade appellate review, but then say, well, it will never evade appellate review. Because how would you not be able to appeal this if you get an adverse judgment against you? We could, but it's the same thing, though, however, could have been said about the First Bank. And the reason why, in that case, it evaded- It just said it could. So how is there a public jurisdiction? Well, because in that case, it was because it was a repetitive misapplication procedure. In this case, we have two district court judges, with all due respect to them, who have applied the same reasoning. That, you know, because there wasn't a two and a half year delay, I calculated, there was a year and a half delay. Before COVID, it took the district court, with all due respect to it, a year to decide my motion to vacate default. And then, during COVID, I was going in, and it took them- I was under the impression, having had missed that email to refile my motion under the new judge's rules, that my motion was pending and subject to review. Where a pre-COVID motion took a year to decide by the district court, I was simply waiting for my motion to be decided. But as far as jurisdiction goes, though, I do think that the First Bank PR versus JMO shows how, in that case, for the denial of a default judgment, of course, that's the opposite of what we're looking at here, invokes collateral jurisdiction. Judge Kuhn said that he's not subjecting this case to a jury trial. Those were his exact words, and I remember it as though it were yesterday. And, you know- Well, you know, what he says, it's in the context of a paragraph where he says, you are going to resolve it. I am not going to put a jury through the trial of this case. I think you gentlemen need to talk to your clients and come to a consensual resolution. We have excellent magistrate judges here. I mean, he goes on. He's clearly leaning on the parties to settle. He's not saying you do not have a right to a jury trial. I understand your argument, but, you know, the abuse of discretion also falls in when he mentions this is how we do it in the hood, meaning that, you know, he was effectively taking my clients out of the case in chief in a way to force us to settlement. You know, and while my adversary may sit best on his laurels and apply for default and default judgment at his leisure, he has no- I presume he has no time limit. Judge Feuerstein similarly gave me no time limit to renew. And the dilatory conduct was 18 months. And again, I respectfully submit my motion to vacate default in and of itself pre-COVID took a year to be decided. During COVID, I think it was safe for me to figure, OK, great. Well, they're still working on my motion. But I do think that First Bank PR versus Jane Mobile, while only persuasive on this court, provides us support with federal order jurisdiction. Thank you, Your Honor. Mr. Burke, thank you. And we'll hear from Mr. Mead for a minute. Yes, Your Honor. Thank you. Just to touch upon Mr. General's- one of Mr. General's last comments on the dilatory- alleged dilatory tactics. The court should note that it wasn't until November 30th, 2012, when Judge Kuntz- I'm sorry, Judge Duntz had ordered the Rule 26A disclosures that we finally got the $470,000, which they're alleging in attorney's fees in this case. Judge Kuntz wasn't aware of that when he made this order. The issues we keep going back to is whether or not- what is the harm that everyone is incurring? Well, we didn't know the entire time what their damages were. We were trying to contest- we want to contest the merits of this case because of the injunction, but also because it's a RICO case. My clients are incurring fees. I've never seen- I haven't seen a 12C motion just denied outright the ability to make it. The- if you look at the dockets- refer to the dockets, I've got six seconds left. Most of the filings were from the plaintiff, not the defendant in this case. Thank you. All right, thank you. We'll reserve decision. Thank you, Your Honor.